BROWER *against* FISHER.

The prosecutor of a charge of *lunacy*, is not, of course, ordered to pay *costs*, where the party is found, by the inquisition, to be of sound mind, if the prosecution has been in good faith, and upon probable grounds.

A person deaf and dumb from his nativity, is not, therefore, an idiot, or *non compos mentis ;* though such, perhaps, may be the legal presumption, until his mental capacity is proved, on an inquiry and examination for that purpose.

IN *March*, 1810, the plaintiff purchased of the defendant his right or share in his father's real and personal estate, which was subject to debts and incumbrances, for 375 dollars. On receiving a deed of conveyance from the defendant, the plaintiff gave him a note for the consideration money, payable in *May*, 1811. The plaintiff being, afterwards, indebted to the defendant in the sum of about seventy dollars, he gave a bond to the defendant for the amount of the note and that debt, making 479 dollars. The bill stated that the defendant, at the time of the purchase, was of lawful age. That he was born deaf and dumb, and had continued so from his nativity, but had sufficient intelligence to communicate his ideas, by signs, to those who were intimate with him, so as to make himself well understood. That the defendant, at the time of the purchase, was assisted by his mother and by *W. Barker*, a friend of the defendant, and that the price agreed to be paid was a full and fair consideration for his interest, under the circumstances. That the plaintiff was, at the time, advised that no valid legal objection could be made to the transaction. That the defendant has since brought an action at law against the plaintiff on the bond, and recovered a judgment for 666 dollars and 16 cents, the principal and interest due on the bond, which the plaintiff

*June 23d.*

1820.

BROWER
v.
FISHER.

was willing to pay into Court, or in any way the Court might direct, as the plaintiff, having been advised that the deed of conveyance from the defendant to him was not valid, for want of legal capacity in the defendant to contract, did not feel safe in paying *the money to the defendant;* believing that if the title should prove defective, he should be without redress against the defendant, who had become intemperate, and was wasting his property. That an execution had been taken out on the judgment, &c.

An injunction was issued to stay the execution, according to the prayer of the bill. The defendant answered the bill, admitting the facts and allegations it contained.

On the *petition* of the plaintiff, a *commission of lunacy* was issued, to inquire whether the defendant was *compos mentis* or not; and by the inquisition returned, it was found that the defendant was born deaf and dumb, and had continued so from his nativity; but that, notwithstanding, he had sufficient intelligence for the management of himself and his property, and was capable of communicating, by signs and motions, with persons with whom he was intimate, so as to be well understood, and of understanding them; that the jurors were of opinion that the defendant was not a lunatic, unless the fact of his having been born *deaf* and *dumb*, in judgment of law, made him a lunatic, and that the defendant conveyd all his title and interest in his father's estate, to the plaintiff, for 375 dollars, which was a fair consideration for the same.

On filing the inquisition, the injunction was dissolved, and the plaintiff paid the amount of the judgment, with costs. The cause was now set down for hearing on the bill and answer, no testimony having been taken by either party; and the only question was, whether the bill was to be dismissed, with or without costs.

*A. M'Donald,* for the plaintiff.

*J. Smith,* for the defendant.

THE CHANCELLOR. The sole question in this case is, whether the bill shall be dismissed with or without costs. The plaintiff claims no relief after the inquisition which has been returned.

Upon the finding of the jury under the commission, in nature of a writ *de lunatico inquirendo,* I refused to appoint a *committee,* and adjudged that the defendant was not to be deemed an idiot from the mere circumstance of being born deaf and dumb. This is a clear settled rule, and numerous instances have occurred in which such afflicted persons have demonstrably shown, that they were intelligent, and capable of intellectual and moral cultivation.

In *Elliot's* case, (*Carter's Rep.* 53.) *Bridgman,* Ch. J. and the other judges of the C. B. admitted a woman born deaf and dumb, to levy a fine, after due examination of her. He mentioned, also, the case of one *Hill,* who was born deaf and dumb, and who was examined by Judge *Warburton,* and found intelligent, and admitted to levy a fine. So Lord *Hardwicke,* in *Dickenson* v. *Blisset,* (*Dick. Rep.* 268.) admitted a person born deaf and dumb, upon being examined by him after she came of age, to take possession of her real estate.

Notwithstanding these authorities, the bill does not appear to have been filed vexatiously, but rather to obtain, for greater caution, the opinion of the Court on a point which had been left quite doubtful in many of the books, and which had never received any discussion here. It is stated, in *Bracton,* (*De Exceptionibus,* lib. 5. ch. 20.) to be a good exception taken by the tenant : *Si persona petentis fuerit surdus et mutus naturaliter, hoc est, nativitate ;* for it is said, *acquirere non potest, et per officium judicis invenienda sunt ei necessaria quoad vixerit ;* and he takes it for granted, that such a person is placed under a *curator,* and that he must sue

1820.

BROWER
v.
FISHER.

in assise, *sicut minor*. So, it is said, in *Brooke*, (*Eschete*, pl. 4.) that *videtur qui surdus et mutus ne poet faire alienation*; and the distinction taken was, (*Dy.* 56. a. note 13.) that if deaf and dumb from his birth, he was *non compos*, but not if so by casualty.(*a*) By the civil law, it was also generally understood and laid down, that a person born deaf and dumb was incapable of making a will, and he was deemed a fit subject for a curator, or guardian. (*Inst.* 1, 23, 24: and *Ferniere*, h. t. and *Inst.* 2. 12. 3. and *Ferrier and Vinnius*, h. t.) Perhaps, after all, the presumption, in the first instance, is, that every such person is incompetent. It is a reasonable presumption, in order to insure protection, and prevent fraud, and is founded on the notorious fact, that the want of hearing and speech exceedingly cramps the powers, and limits the range of the mind. The failure of the organs requisite for general intercourse and communion with mankind, oppresses the understanding; *affigat humo divinæ particulam auræ*. A special examination, to repel the inference of mental imbecility, seems always to have been required; and this presumption was all that was intended by the civil law, according to the construction of the Ecclesiastical Courts; for a person born deaf and dumb was allowed to make a will, if it appeared, upon sufficient proof, that he had the requisite understanding and desire. (*Swinb.* part 2. s. 10.)

I am satisfied that the plaintiff is justly to be exempted from the charge of a groundless and vexatious inquiry, and the course is not to punish the prosecutor of a charge of

(*a*) The author of *Fleta*, (lib. 6. c. 40.) supposes a person born deaf *or* dumb, to be incapable of enfeoffing, &c.: " Competit etiam exceptio tenenti propter defectum naturæ petentis, vel si naturaliter a nativitate *surdus* fuerit *aut* mutus, tales enim adquirere non poterunt, nec alienare, quia non consentire, quod non est de tarde mutis vel surdis, quibus dandi sunt curatores et tutores, &c. But *Coke* (*Co Litt* 42. b.) says, a man deafe, dumb, or blind, so that he hath understanding and sound memory; albeit, he expresse his intention by signs, may infeoffe," &c., though a man deaf, dumb *and* blind, from his nativity, cannot.

lunacy with costs, if the prosecution has been conducted in good faith, and upon probable grounds. (1 *Collinson on Lunacy*, 461. 464.) I shall, therefore, dismiss the bill without costs.